580 So.2d 131 (1991)
Frank A. WALLS, Appellant,
v.
STATE of Florida, Appellee.
No. 73261.
Supreme Court of Florida.
April 11, 1991.
Rehearing Denied June 13, 1991.
*132 Nancy Daniels, Public Defender, and W.C. McLain, Asst. Public Defender, Second Judicial Circuit, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen., and Mark C. Menser, Asst. Atty. Gen., Tallahassee, for appellee.
KOGAN, Justice.
Frank A. Walls appeals from a judgment and sentence of death. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const.
During the early morning hours of July 22, 1987, a neighbor heard loud noises coming from the mobile home of the victims, Edward Alger and Ann Peterson. When Alger failed to report for duty at the air force base his superior officer Sergeant Calloway went to Alger's home. The body of a nude female was discovered in the front bedroom. Calloway left immediately to telephone police.
When investigators arrived, they found Peterson lying face down on the floor of the front bedroom. She had been shot twice in the head. Alger's nude body was found on the floor of the second bedroom. His feet were tied with a curtain cord and a piece of the same cord was tied to his left wrist. Alger had been shot three times and his throat was cut.
A warrant was obtained to search the mobile home where Walls lived with his roommate. The warrant was issued based primarily on information given to the investigators by Walls' former roommate, who lived in the mobile home adjacent to that of the victims. A number of items were seized during the search that were linked to the crime scene.
Following his arrest, Walls gave a statement to the investigators detailing his involvement in the murders. Walls was charged with ten offenses. Some of these charges were dismissed or reduced to lesser offenses following Walls' motion for judgment of acquittal at the conclusion of the trial.
During pretrial detention, a correctional officer named Vickie Beck was asked to conduct a surveillance of Walls, because he was suspected in other murders. Beck approached Walls and assured him that anything he told her would remain confidential. She insisted that Walls not tell his attorney. As a result of her observations, Beck took detailed notes of Walls' statements and behavior. Later, these notes were given to the state and its examining psychiatrists.
Walls pleaded not guilty and filed several pretrial motions, including a motion to determine his competency to stand trial. Five experts testified, three stating Walls was incompetent and two finding he was competent. The latter two were the only ones who had relied on Beck's notes in evaluating Walls. The trial judge agreed with these two experts and held that Walls was competent to stand trial.
The jury found Walls guilty of all charges submitted. On the murder counts Walls was found guilty of felony murder for the death of Alger and guilty of premeditated and felony murder for the death of Peterson. After hearing the evidence in mitigation the jury recommended a life sentence for the death of Alger and a sentence of death for the murder of Peterson. The trial court complied with the jury's recommendations.
In this appeal, Walls raises several issues, one of which is dispositive of the case. Walls argues that Beck's activities during his pretrial detention violated his constitutional rights. We agree that it violated the due process provision of the Florida Constitution, article I, section 9.
*133 As a matter of Florida law, we believe the legal rigors imposed by due process come into play when a psychiatric evaluation that may be used in any manner against the accused is conducted in whole or in part by means of an illegal subterfuge. Art. I, § 9, Fla. Const. This includes instances when a third-party employing such a subterfuge effectively is serving as information gatherer for medical or psychological professionals who later will make such evaluations. Id.
This is a conclusion required by precedent. The term "due process" embodies a fundamental conception of fairness that derives ultimately from the natural rights of all individuals. Scull v. State, 569 So.2d 1251 (Fla. 1990). "Fairness" is nearly the equivalent of the concept of "good faith," which imposes a standard of conduct requiring both fairness and honesty. Municipal Bond & Mortgage Corp. v. Bishop's Harbor Drainage Dist., 154 Fla. 246, 17 So.2d 226 (1944). As we stated in Haliburton v. State, 514 So.2d 1088 (Fla. 1987), "`due process requires fairness, integrity, and honor in the operation of the criminal justice system, and in its treatment of the citizen's cardinal constitutional protections.'" Id. at 1090 (quoting Moran v. Burbine, 475 U.S. 412, 467, 106 S.Ct. 1135, 1165, 89 L.Ed.2d 410 (1986) (Stevens, J., dissenting)).
By any stretch of the imagination, the subterfuge used against Walls in this instance fails either to be fair or honest. Thus, since the subterfuge led to information later used against Walls, due process is implicated and the courts are required to conduct an intensive scrutiny of the police conduct in question.
In a similar context, the United States Supreme Court has noted that
certain interrogation techniques, either in isolation or as applied to the unique characteristics of a particular suspect, are so offensive to a civilized system of justice that they must be condemned under the Due Process Clause... .
Miller v. Fenton, 474 U.S. 104, 109, 106 S.Ct. 445, 449, 88 L.Ed.2d 405 (1985). The Court then noted that "ours is an accusatorial and not an inquisitorial system." Id. at 110, 106 S.Ct. at 449 (quoting Rogers v. Richmond, 365 U.S. 534, 541, 81 S.Ct. 735, 739, 5 L.Ed.2d 760 (1961)). It concluded that the admissibility of confessions obtained by ruse does not rest merely on whether those confessions were voluntary.[1] Rather, due process requires an examination of the particular methods used to extract the confession, even if that confession was voluntary in the strictest sense of the term.
In the recent case of Illinois v. Perkins, ___ U.S. ___, 110 S.Ct. 2394, 110 L.Ed.2d 243 (1990), Justice Brennan has elaborated on the standards discussed above. The Perkins Court confronted a situation in which an undercover officer posed as an inmate and thereby extracted a confession from another inmate. The majority held that Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), was no bar to the admissibility of the confession because it had not been coerced. Perkins, 110 S.Ct. at 2399. However, Justice Brennan noted that, on remand, the court below still would be required to consider whether the Miller case barred the confession on due process grounds. Id. at 2400-01. Justice Brennan stated:
The deliberate use of deception and manipulation by the police appears to be incompatible "with a system that presumes innocence and assures that a conviction will not be secured by inquisitorial means... ."
Id. at 2400 (quoting Miller, 474 U.S. at 116, 106 S.Ct. at 452-53).
We find that the due process provision of the Florida Constitution embodies the principles of fundamental fairness elaborated by Justice Brennan in Perkins. Art. I, § 9, Fla. Const. Due process contemplates that the police and other state agents act in an accusatorial, not an inquisitorial, manner. Gross deception used as a means of evading *134 constitutional rights has no place in such a system.
Yet gross deception is precisely what led to the statements made by Walls while in custody. Here we find the surreptitious, admittedly illegal gathering of information later transmitted to those conducting psychiatric evaluations of the accused. In this case, a state agent befriended Walls, fraudulently encouraged him to speak freely "in confidence" to her, failed to warn him that the information she obtained later would be used against him in court, and discouraged him from telling his attorney of her activities. Later, these illegally obtained statements formed a substantial part of the basis for expert statements on which the trial court directly relied in finding Walls competent to stand trial.
The state conceded at trial that this trickery violated Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964), and Malone v. State, 390 So.2d 338 (Fla. 1980), cert. denied, 450 U.S. 1034, 101 S.Ct. 1749, 68 L.Ed.2d 231 (1981); and in this assessment, we must wholeheartedly agree.[2] Here, as in Malone, we are confronted with a state-sponsored subterfuge designed in part to trap Walls and circumvent the clear requirements of the Constitution. See id. at 340. Thus, the trial court properly concluded and the state conceded that none of the information obtained by Beck could be used against Walls in the state's case at trial or in the penalty phase.
As a matter of Florida law, however, we believe the trial court erred in not excluding Beck's information from all aspects of trial. We do not agree with the state's argument that it now may have the advantage of Beck's subterfuge on matters relating to Walls' competence to stand trial. The clear requirements of article I, section 9 of the Florida Constitution have been violated, as well as this Court's prior holding in Malone.
When the state employs an illegal subterfuge, the Florida Constitution forbids it from using the fruits of that subterfuge for any purpose that will work to the detriment of the defense's case, including determination of competence or insanity. Any other conclusion would encourage the use of such subterfuges and run against every basic conception of fairness embodied within article I, section 9 of our Constitution. The procedure employed by the police in this instance flouted these standards and directly resulted in a court ruling on the competency issue that is now tainted by the illegal subterfuge. The court order and all that followed it thus cannot be allowed to stand under the Florida Constitution. Art. I, § 9, Fla. Const.
We also believe that the police conduct in this instance constituted an illegal interference with the attorney-client relationship in violation of our opinion in Haliburton, which itself rested entirely on article I, section 9 of the Florida Constitution. Haliburton, 514 So.2d at 1090. Although Haliburton dealt with the state's deliberate failure to tell the accused of his attorney's communications, the issues presented by this case are sufficiently similar to warrant a similar result. Here, a state agent fraudulently interfered with the attorney-client relationship through deception aimed at preventing the accused from revealing information that would have alerted his attorney to the state's fraudulent activities. We believe the following statement from Haliburton thus is equally applicable to the present case:
"[P]olice interference in the attorney-client relationship is the type of governmental misconduct on a matter of central importance to the administration of justice *135 that the Due Process Clause prohibits."
Haliburton, 514 So.2d at 1090 (quoting Burbine, 475 U.S. at 467, 106 S.Ct. at 1165 (Stevens, J., dissenting)). Thus, the state's actions here constituted an unconstitutional interference with the attorney-client relationship, in violation of article I, section 9 of the Florida Constitution. Id. (relying on art. I, § 9, Fla. Const.).
We hasten to distinguish this case from other cases in which police surveillance does not involve a ruse or subterfuge. The state and its agents clearly are entitled to watch a person in custody and make notes of that person's voluntary or spontaneous behavior or comments. Psychiatric evaluations conducted in good faith and with proper authorization also clearly are an acceptable means for the state to employ, especially when competency or sanity may be in issue. Nothing prohibits the state from good-faith efforts to determine whether the defense's allegation of incompetency or insanity is genuine or spurious.
For the foregoing reasons, we reverse the judgment of the court below and remand for new trial on all issues. On remand, any further psychiatric or psychological evaluations conducted on Walls shall not rely to any degree, directly or indirectly, on the information obtained by Beck. Thus, to eliminate the taint, any such evaluations shall not be conducted by the experts who previously received the information taken as a result of the police subterfuge.[3]
It is so ordered.
SHAW, C.J., and BARKETT, J., concur.
GRIMES, J., concurs in result only.
McDONALD, J., dissents with an opinion, in which OVERTON, J., concurs.
GRIMES, Justice, concurring in result only.
Because of the clear violation of Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964), I agree that the mental health experts should not have been permitted to testify after having been given the correctional officer's notes concerning Walls' statements and behavior.
McDONALD, Justice, dissenting.
Because the information obtained by the State was utilized solely for the purpose of evaluating the defendant's competency, I cannot join in the conclusion that there was a reversible due process violation. Had the State's action led to a confession on the facts of the case or led to the introduction of substantive evidence, I likely would join in the reversal. I do not believe, however, that the inappropriate gathering of facts surrounding one's competency equates to a due process violation.
OVERTON, J., concurs.
NOTES
[1] Voluntariness, of course, involves consideration of the standards announced in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[2] At trial, the state made the following comments:

The State is prepared to stipulate that the statements given to Miss Beck by Walls were custodial, they were given without the advice by Mrs. [sic] Beck to Mr. Walls of his Miranda rights, and that they were not admissible for purposes of proving guilt, they are not admissible in any regard in the State's case in chief.
Then the State's position is, consistent with the case law that I think we have here, that it is admissible as are [sic] other matters, for example, for use of impeachment should the defendant take the stand, and for use in making a determination as to mental state, such as competency hearing [sic].
[3] All other issues raised by the parties are rendered moot by this opinion and will not be addressed.