636 So.2d 1289 (1994)
Albert HOLLAND, Appellant,
v.
STATE of Florida, Appellee.
No. 78660.
Supreme Court of Florida.
March 24, 1994.
Rehearing Denied June 9, 1994.
*1290 Richard L. Jorandby, Public Defender and Richard B. Greene, Asst. Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Atty. Gen. and Carolyn M. Snurkowski, Asst. Atty. Gen., Tallahassee, for appellee.
PER CURIAM.
Albert Holland, Jr. appeals his convictions of first-degree murder of a law enforcement officer, armed robbery, sexual battery, and attempted first-degree murder and the sentences imposed, including a sentence of death. We have jurisdiction based on article V, section 3(b)(1) of the Florida Constitution.
Holland was convicted of fatally shooting Pompano Beach police officer Scott Winters. The killing occurred when Winters tried to arrest Holland for sexual battery and attempted first-degree murder. The jury convicted Holland of first-degree murder and recommended death by a vote of eleven to one. The trial judge followed the jury's recommendation and sentenced Holland to death. We reverse the convictions and sentences because a contract jail psychiatrist's testimony should not have been used in a competency hearing and at trial on the issue of Holland's sanity.
The record reflects these relevant facts: Holland attacked a woman he met on the afternoon of July 29, 1990. Holland ran off after a witness interrupted the attack by shouting, "Man, you're gonna kill that woman." Police officers responding to a call about the attack found the victim semi-conscious with severe head wounds. Based on witnesses' accounts, police  including Officer Winters  began searching for a man believed to have been involved in the attack. A short time later, witnesses saw Winters struggling with Holland. During the struggle, the officer hit Holland with a nightstick and put Holland in a headlock. Holland grabbed the officer's gun and shot Winters twice. Police officers testified that Winters called for backup at 7:25 p.m., then called at 7:26 p.m. and said he had been shot. When officers reached Winters, they saw that his gun was missing. Winters died of gunshot wounds to the groin and lower stomach area at 8:30 p.m.
*1291 After his indictment, Holland raised the issue of his competency to stand trial. The trial judge found him competent. Holland's defenses at trial included insanity.
Holland raises twenty-four issues on this direct appeal,[1] the first of which is dispositive. Holland claims that the trial court erred in overruling defense counsel's objections to the testimony of a State witness, psychiatrist Abbey Strauss, who testified at the competency hearing and at trial. We agree. Accordingly, we reverse both the convictions and sentences.
Holland invoked his rights to counsel and to remain silent during his first appearance on July 30, 1990. The judge indicated at the hearing that he would sign an order prohibiting law enforcement interviews outside the presence of Holland's attorney. After the judge entered his order dated July 30, 1990, Strauss, a contract psychiatrist with the Broward County Jail, examined Holland twice in jail in August 1990 to help determine whether Holland needed further mental-health evaluation or could be put into the jail's general population. There was no notice to counsel. The State, however, later contacted Strauss and secured his testimony on the issues of Holland's competency and sanity. Strauss was the State's only expert witness at the competency hearing and was a key prosecution witness on the issue of insanity.
The record reflects that Strauss's testimony drew almost exclusively on his observations and impressions from his August jail visits. Strauss testified at the competency hearing that after his two visits at the jail he concluded Holland was malingering. Although Strauss later reviewed additional information, including records of Holland's earlier psychiatric hospitalization, he testified that the information simply reinforced his initial conclusion. During his testimony, Strauss also suggested that Holland might have responded differently to him during the jail visits if Holland had known the results would be used on the issue of competency.
Strauss's testimony that Holland was competent to stand trial was crucial because the court-appointed mental health experts testified that Holland was incompetent. The trial judge noted that he had never gone against court-appointed mental health experts, but he nonetheless agreed with Strauss and found Holland competent to stand trial. Thus, the error in allowing Strauss's testimony on competency cannot be harmless.
*1292 The record also shows that Strauss's jail visits  not his review of additional information  convinced him of Holland's sanity. During trial, he testified that he formed his opinion after the second jail visit:
Q. [on cross-examination by defense attorney]. In fact, your opinion didn't change since the first day you saw Albert Holland, did it?
A. [by Strauss]. Since the second day I saw him.
Q. Second day, you mean when you went to see him the second time?
A. Yes.
Q. And at that time, you didn't have the benefit of any medical  prior medical record?
A. I didn't feel at the time it was necessary.
Q. Okay. And even though you saw some four or five years of medical records from Saint Elizabeth's Hospital, that still didn't change your opinion?
A. No.
It is obvious from the record that Strauss's observations and findings during the August jail visits formed the basis of his testimony at the competency hearing and at trial. Defense counsel had no notice of these visits. Lack of notice would not be a problem if Strauss's testimony been confined to his observations of Holland, as opposed to his expert opinions relating to Holland's competency and sanity. Walls v. State, 580 So.2d 131, 135 (Fla. 1991) ("The state and its agents clearly are entitled to watch a person in custody and make notes of that person's voluntary or spontaneous behavior or comments."). In addition, we have held that "[p]sychiatric evaluations conducted in good faith and with proper authorization also clearly are an acceptable means for the state to employ, especially when competency or sanity may be in issue." Id. (emphasis added).
Strauss's testimony was, in the end, the type of testimony the United States Supreme Court disapproved in Powell v. Texas, 492 U.S. 680, 109 S.Ct. 3146, 106 L.Ed.2d 551 (1989). In Powell the Court found that the introduction of psychiatric evidence on future dangerousness based on an in-custody psychiatric exam conducted without notice to counsel violated the Fifth and Sixth Amendments to the United States Constitution. While the introduction of defense evidence on insanity constitutes a partial waiver of a defendant's Fifth Amendment rights against self-incrimination, the introduction of psychiatric evidence to support an insanity defense does not waive his Sixth Amendment right to consult with counsel. Id. at 684-85, 109 S.Ct. at 3149-50. Defense counsel in Powell had notice that his client would be examined for competency and sanity, but he did not have notice that the exam would encompass the issue of future dangerousness. Id. at 682, 109 S.Ct. at 3148. Defense counsel in the instant case did not even have notice of Strauss's jail visits. Because Strauss testified about competency and sanity  and based his opinions almost exclusively on those visits  the lack of notice, as in Powell, violated Holland's Sixth Amendment right to consult with counsel. The testimony also violated article I, section 9 of the Florida Constitution. As Strauss himself testified, Holland's responses might have been different had he known the ultimate nature of the visits. Strauss thus should not have been allowed to testify about Holland's competency and sanity based on information he acquired during the August visits.
In addition, and significantly, Holland had not filed a motion to rely on an insanity defense when Strauss visited him in jail. Florida Rule of Criminal Procedure 3.216(d) allows a compelled examination only after a defendant files notice of intent to rely on an insanity defense. The United States Supreme Court has held that a defendant waives the Fifth Amendment right to remain silent on raising a mental-status defense. Buchanan v. Kentucky, 483 U.S. 402, 421-24, 107 S.Ct. 2906, 2917-19, 97 L.Ed.2d 336 (1987). In this case, however, Holland had not raised such a defense when Strauss visited him, and, as the judge's order prohibiting law enforcement interviews outside the presence of Holland's attorney underscores, he had not waived his right to remain silent. Thus, Strauss's testimony as to Holland's *1293 sanity violated Holland's Fifth Amendment right to remain silent.
Our resolution of this issue is confined to the circumstances of the instant case. Nothing in this opinion prohibits someone from testifying about observations of a criminal defendant in jail. As we noted in Walls, "[t]he state and its agents clearly are entitled to watch a person in custody and make notes of that person's voluntary or spontaneous behavior or comments." 580 So.2d at 135. Nor should our opinion be interpreted to prohibit a psychiatric evaluation without notice for the purpose of determining the proper placement of the defendant in jail or for routine psychiatric treatment not related to the issues of competency or sanity.
Although the first issue requires reversal of Holland's conviction and sentences, we discuss the second issue  whether the trial court erred in allowing irrelevant collateral crime testimony into evidence  to avoid the possibility of any error upon retrial. Holland complains that the trial court should not have allowed the State to cross-examine three mental-health professionals about other crimes. We find no error in the cross-examination because the State properly tested the strength of the mental-health professionals' findings.
Holland further argues that the testimony of three other State witnesses was irrelevant. On this point we agree. First, a District of Columbia prosecutor testified about 1989 criminal charges against Holland for possession of cocaine with intent to distribute and battery on a law enforcement officer. Whatever limited relevance these charges might have had, the prosecutor's testimony improperly focused on Holland's exercise of his legal rights in the courtroom. In addition, the prosecutor testified over objection to several hearsay statements, including his testimony about the circumstances in which Holland walked away from a halfway house and did not appear in court.
Second, we find irrelevant the testimony of a pipe fitter who worked with Holland at a prison and testified that Holland did not give him his correct name. This testimony was irrelevant to the issues in this case.
Finally, the testimony of a District of Columbia police officer about a 1989 incident in which Holland was charged with a drug offense and assault on a law enforcement officer was not relevant. The officer testified that Holland tried to grab his service revolver during a struggle. Collateral crimes are relevant to prove a material fact in issue such as motive, intent, absence of mistake, or identity. § 90.404(2)(a), Fla. Stat. (1993); see also Minick v. State, 560 So.2d 386, 387 (Fla. 3d DCA 1990). The record reflects that the purpose of the evidence in this case was to show Holland's propensity to struggle with a police officer when arrested. Evidence of collateral crimes or acts is not admissible to show a criminal defendant's propensity. Williams v. State, 110 So.2d 654, 662 (Fla.), cert. denied, 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 86 (1959). This was not, as in Williams, evidence admissible to show a plan, scheme, or design. Id. at 662. The admission of improper collateral offense evidence is presumed harmful. Straight v. State, 397 So.2d 903, 908 (Fla.), cert. denied, 454 U.S. 1022, 102 S.Ct. 556, 70 L.Ed.2d 418 (1981). It should not be allowed on retrial.
We do not address the other issues Holland raises. Because the State improperly relied on the testimony of Strauss during the competency hearing and at trial, we find that Holland's right of due process and his Fifth and Sixth Amendment rights were violated. Accordingly, we reverse and remand for a new trial.
It is so ordered.
BARKETT, C.J., and SHAW, GRIMES and HARDING, JJ., concur.
OVERTON, J., concurs specially with an opinion.
KOGAN, J., concurs in result only.
McDONALD, J., dissents with an opinion.
OVERTON, Justice, specially concurring.
I find that the United States Supreme Court's decision in Powell v. Texas, 492 U.S. 680, 109 S.Ct. 3146, 106 L.Ed.2d 551 (1989), *1294 is absolutely controlling on Strauss's testimony at the trial on the merits as a state expert on Holland's claim of insanity at the time of the offense. However, I do believe that Strauss was a proper witness on the issue of competency to stand trial. These are two distinct issues and, in my view, Powell does not control the competency-at-trial question.
McDONALD, Justice, dissenting.
The majority makes a mistake in granting a new trial because of the use of Dr. Strauss' testimony. Dr. Strauss testified on two occasions: (1) the pretrial hearing to determine competency to stand trial and (2) at trial on the issue of insanity at the time of the commission of the crime. No objection to his ability to testify because of a claimed fifth or sixth amendment violation was raised at either proceeding. The issue is therefore procedurally barred.[2]
Had the issue been preserved, I believe Dr. Strauss' testimony to be proper. Dr. Strauss was, in effect, a treating physician. He did not initially examine Holland for any trial purpose. Dr. Strauss was recommending where Holland should be placed and assisting in his psychiatric health care. His interviews were not conducted to elicit information of the crime or with the purpose of using it against him.
The majority inadvertently misapplies Powell v. Texas, 492 U.S. 680, 109 S.Ct. 3146, 106 L.Ed.2d 551 (1989). That case has no application to this one. In Powell the state examined a defendant for the purpose of using a death aggravating factor of future dangerousness against a prisoner without giving a fifth amendment warning and in violation of his sixth amendment right to counsel. This is a distant cry from what transpired in this case. It was only after Holland raised the competency and insanity issues that any thought was given to using Dr. Strauss as a witness.
The majority also errs in stating that Dr. Strauss was the only witness for the state on the issue of insanity. He was the only one at the competency hearing, but had the company of at least two other state experts at trial.
If there were errors in this trial, they were harmless. There was no question that Holland committed the homicide. The only real issue is that of Holland's mental condition, and that issue was fairly tried.
Holland deserves to be convicted. Holland deserves the death penalty. We should affirm both.
NOTES
[1] Holland raises these issues: (1) whether the trial court erred in overruling defense counsel's objections to the testimony of Dr. Strauss; (2) whether the trial court erred in allowing irrelevant collateral crimes testimony into evidence; (3) whether the trial court erred in removing Holland's original counsel without notice and a hearing and over Holland's subsequent objection; (4) whether the trial court failed to make an adequate inquiry into Holland's complaints about counsel; (5) whether the trial court erred in holding an inadequate inquiry into Holland's desire for self-representation and in refusing to allow Holland to represent himself; (6) whether the trial court erred in granting the prosecution's special jury instruction on felony murder; (7) whether the trial court erred in forcing defense counsel to proceed without any means of communications with Holland; (8) whether the trial court erred in failing to suppress Holland's statements; (9) whether the trial court erred in overruling appellant's objection to the admissibility of the inaudible videotape; (10) whether the evidence of premeditation is legally sufficient; (11) whether the trial court erred in refusing to allow release, or at least in-camera review, of the grand jury testimony; (12) whether the trial court erred in allowing the prosecution to proceed on a theory of felony murder when the indictment gave no notice of the theory; (13) whether the trial court erred in denying a continuance of trial; (14) whether the trial court erred in denying a penalty phase continuance; (15) whether Holland's absence from the hearing on the motion to continue the penalty phase is reversible error; (16) whether the court erred in denying a requested instruction concerning the doubling of aggravating circumstances; (17) whether the trial court erred in its finding of aggravating circumstances and in its failure to find and consider unrebutted nonstatutory mitigating circumstances; (18) whether death is disproportionate; (19) whether the court erred in refusing to give a jury instruction on Holland's use of intoxicants during the offense; (20) whether the trial court erred in failing to give instructions on Holland's background and history of drug addiction; (21) whether aggravating circumstance of committed during an enumerated felony is unconstitutional on its face and unconstitutionally applied; (22) whether aggravating circumstance that the victim was a law enforcement officer is unconstitutional on its face and as applied; (23) whether the trial court erred in departing from the guidelines sentence without a contemporaneous departure order; and (24) whether Florida's death penalty statute is unconstitutional.
[2] I find no objection at all in the record at the competency hearing. The only objection at the trial is found in the following dialogue subsequent to the state's qualifying Dr. Strauss as an expert:

Mr. Satz: Your honor, at this time I'd like to offer Doctor Strauss as an expert in the field of forensic psychiatry.
Mr. Giaconno: Your honor, the only objection we have for the record is that he first acquired knowledge of our client as an employee for the state and then later became an expert of the state attorney, but the overlap we feel should be an abuse of the privilege. We respectfully object.
The Court: I'll declare him to be an expert. The objection made did not urge a fifth or sixth amendment violation.