696 So.2d 519 (1997)
Michael LEVERETT, Appellant,
v.
STATE of Florida, Appellee.
No. 95-3539.
District Court of Appeal of Florida, Fourth District.
July 9, 1997.
*520 Kayo Morgan, Fort Lauderdale, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Patricia Ann Ash, Assistant Attorney General, West Palm Beach, for appellee.
WARNER, Judge.
In challenging his conviction and sentence for sexual battery, the appellant contends that "Williams Rule evidence" of a prior similar act should not have been admitted as it was not strikingly similar to the charged crime. We reverse.
According to the state's evidence, the twenty-five year old victim in this case had been at a bar in the early daylight hours of Saturday, July 17, 1993. She was an admitted alcoholic, and had been using cocaine since the evening before until her supply ran out. She met the thirty-two year old appellant, who told her that he could supply her with cocaine via his sister. She agreed to go with him to his house. Once there, she agreed to go to his bedroom, where she remained watching TV for about 30 minutes while the appellant was outside of the room talking to someone. When he returned to his bedroom, the appellant asked the victim for the money, which she gave to him, and he placed it on a table. The appellant then told her that he had made a tape of their conversation. The victim told him that she did not care about the tape, because she did not think she had done anything wrong.
The appellant then grabbed her by her neck, causing the victim to drop to her knees, and let her get up. He then offered her a butter knife, telling her she might need it. She put it on a table. He then forced her to have vaginal intercourse with him twice, and attempted to get her to perform oral sex on him. During this time, he demanded that she tell him that she loved him and that she wrap her legs around him, which the victim refused to do. After the appellant fell asleep, the victim escaped. Once she was out in the street, she realized that the appellant was pursuing her in his car. He said he would take her home, she refused, he fought her, and she escaped. He then threatened to run her over with his car, and she took refuge at a neighbor's house.
The appellant, who contended that the victim was fabricating the sexual battery, objected to the admission of evidence concerning a 1979 sexual battery to which appellant had pled guilty. The similar fact victim was sixteen years old. She met the appellant at a bonfire in Davie. The appellant was nineteen years old at the time. She consented to kissing him. The similar fact victim had come to the party with friends, but decided to stay when they left and to get a ride home with another friend, Darryl. Although Darryl was supposed to take her home, Darryl took the similar fact victim and the appellant to a bar where Darryl bought Quaaludes. Darryl and the appellant took Quaaludes, and forced the similar fact victim to have one. *521 They then went to the appellant's house in Davie, and all three went to the appellant's bedroom to listen to music. The similar fact victim testified that she had not wanted to go either to the appellant's house or into his bedroom, but she thought they would take her home after they listened to music.
The appellant and Darryl talked in the hall outside the bedroom, and then the appellant came back into the room alone and shut the door. He told the similar fact victim that Darryl was going somewhere to get a joint. He then began making sexual advances towards the similar fact victim. He forced vaginal intercourse on her, and forced her to perform oral sex on him. While he raped her, he taunted her by chanting "rape, rape, rapetell everyone that I raped you." He also dared her to scream, and threatened her that if she screamed, his mother who was a former Outlaw would come and beat her up. After the incident was over, the similar fact victim pretended that everything was okay, even giving the appellant her phone number, so that she could leave safely. A neighbor took her home, she reported the incident, and the appellant pled guilty.
The codification of the Williams rule provides:
Similar fact evidence of other crimes, wrongs, or acts is admissible when relevant to prove a material fact in issue, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, but it is inadmissible when the evidence is relevant solely to prove bad character or propensity.
§ 90.404(2)(a), Fla. Stat. (1993); see also Williams v. State, 110 So.2d 654 (Fla.1959). In Heuring v. State, 513 So.2d 122 (Fla.1987), the supreme court set forth the test for relevancy of similar fact evidence:
To minimize the risk of a wrongful conviction, the similar fact evidence must meet a strict standard of relevance. The charged and collateral offenses must be not only strikingly similar, but they must also share some unique characteristic or combination of characteristics which sets them apart from other offenses.... In addition to the above requirements, the evidence must be relevant to a material fact in issue such as identity, intent, motive, opportunity, plan, knowledge, or absence of mistake or accident. See § 90.404(2)(a).
Id. at 124 (citations omitted).
In this case, identity was not in issue. The appellant admitted that the victim was at his house. His defense was essentially that the victim was lying. Although the state contended at trial that the similar fact evidence supported a pattern or a scheme or a plan, this is not a case in which the collateral crime was being used as a "signature" or a "fingerprint". Instead, we agree with the appellant that the state was using this 14 year old crime to corroborate the victim's testimonysomething which is permitted as to child sexual battery in the familial context, see Heuring; Saffor v. State, 660 So.2d 668 (Fla.1995), but not in this context. See Charles W. Ehrhardt, Florida Evidence § 404.18 (1996 ed.). In other words, the state was using the collateral crime to show the appellant's bad character or propensity, which is not permitted. See § 90.404(2)(a).
The state attempts to show that the two crimes are "strikingly similar." We disagree. In the present case, the victim wanted cocaine from the appellant and voluntarily accompanied him to his house and into his bedroom. During the sexual battery, appellant wanted the victim to tell him that she loved him and to wrap her legs around him, and threatened to hurt her if she made any noise. The similar fact victim never wanted to go to the appellant's house or his bedroom. She never wanted to take the Quaalude the appellant forced upon her. Although she had kissed him earlier, she rejected further advancesat which point he raped her. During the rape, he taunted her by chanting "rape, rape, rape" and daring her to scream out because his mother would beat her up after he was done with her.
This case is similar to Thomas v. State, 599 So.2d 158 (Fla. 1st DCA 1992), in which the state had introduced Williams rule evidence to prove opportunity and scheme or plan. The crime and collateral crime in Thomas were both sexual batteries involving young girls, in which Thomas had taken each girl *522 out in a car and then committed the sexual battery on each girl. However, identity was not an issue, and the collateral crime was remote. The Thomas court stated:
There are fatal flaws in the state's contention. Neither opportunity nor scheme or plan is a disputed factual issue relevant to specific elements of the charge against appellant. None of the elements of the charged sexual battery requires the state to prove a scheme or plan; nor do the elements of the offense require proof of opportunity. Although the state had to prove that appellant was present at the time and place when the charged offense allegedly occurred, appellant admitted he was present at the time and place, and his defense at trial did not create any issue as to "opportunity" to commit the offense.
....
Nor do we discern how the 1976 Georgia episode demonstrates a plan or scheme of unique criminal conduct sufficient to support an inference that appellant committed the sexual battery in 1988. There simply is no unique fact or characteristic involved in either incident that supports an inference from the occurrence of the Georgia episode that appellant employed a like plan or scheme in the instant case. Had the proof shown, for example, several incidents demonstrating that appellant committed a similar offense almost every time he took a child for a ride alone, no doubt we would be confronted with a permissible inference based on the Georgia incident pointing to guilt; but two isolated incidents totally unrelated in any respect and separated by 12 years simply do not prove a scheme or plan in the sense contemplated by section 90.404(2)(a).
Id. at 163-64.
The improper admission of similar fact testimony is presumed to be harmful error. Holland v. State, 636 So.2d 1289, 1293 (Fla.1994); Czubak v. State, 570 So.2d 925, 928 (Fla.1990). Here, there was no physical evidence to corroborate the victim's version of the events. Because this case turned on the credibility of the victim, we cannot say beyond a reasonable doubt that the admission of the collateral crime evidence did not affect the jury's verdict.
Reversed and remanded.
KLEIN, J., and BARR, ROBBIE M., Associate Judge, concur.