THOMPSON, J.,
concurring in part, dissenting in part, with opinion.
I concur that the order on cross-appeal should be affirmed. However, I respectfully dissent from the decision to reverse the suppression order.
The State challenges the trial court’s suppression of admissions deemed involuntary due to Detective Washburn’s use of misleading and deceptive tactics that interfered with Michael Raines’s right to counsel regarding a charge of first-degree pre *424 meditated murder. Raines responds that statements made by law enforcement to mislead his attorney deprived him of due process as guaranteed by the Florida Constitution, article I, section 9. I agree with Raines and would affirm the trial court’s suppression of his statements.
First, we all agree the Bloomington statement is not suppressed by this opinion. The Nashville, Indiana, statement is the basis of the suppression hearing. Second, Detective Washburn’s behavior was more egregious than the majority benignly described. During the suppression hearing, Detective Washburn testified that he telephoned 17-year-old Dustin Ginter in Indiana and spoke with him and his father concerning the crime. Ginter had been staying with Raines in the apartment where the shooting occurred. Washburn commenced his conversation with remarks that he was ready to issue warrants for murder and everything “is gonna depend on what you are gonna have to tell me.... ” Washburn advised Ginter’s father that whether one or two warrants issued for premeditated murder depended on what his son said. Based on his review of the two young men’s history, Washburn said he didn’t think Ginter did it. Ginter’s version, that the victim pointed a gun at them and demanded all their money, was consistent with the story Raines had provided the Indiana authorities.
Pressured to tell the truth, Ginter changed his story and told the detective that Raines had a gun. The revised story elicited various comments and warnings from the detective about lying. At the suppression hearing, Washburn admitted he used threats and mistruths as interrogation tools. He also admitted that his threat to issue a warrant for Ginter for first-degree murder was intended to mislead and frighten him. Ginter told Wash-burn that Raines shot Gibson almost as soon as he entered the apartment. Raines told Gibson he had messed with the wrong guy, retrieved a gun, wrapped it in a pillow, and shot him in the back. Washburn recovered the gun after Ginter told him where it had been discarded. Washburn knew Raines had counsel when he asked Ginter to make a controlled telephone call to Raines to elicit incriminating statements. Ginter agreed. Washburn discussed how Ginter would pretend everything was cool — that Ginter had given the police the self-defense story and he had covered for Raines. Washburn coached Ginter how to handle the police-initiated phone call. The detective explained that he would make Raines feel comfortable to speak openly by portraying him as a witness, not a suspect. Washburn did not recall whether he told the state attorney’s office that he was going to have Ginter tape record Raines in his lawyer’s presence. After Ginter made the telephone call to Raines and reassured him about the self-defense story, Smith and Raines called Washburn. Raines gave his self-defense version of the events. Smith testified that he remained silent throughout this interview because he was told that Raines was only a witness in the case, not a target of an investigation. Had he known Wash-burn’s intentions, he would not have allowed Raines to speak to the detective. During the conversation, Washburn pretended he had not already recovered the gun, but instead asked Raines its whereabouts.
The detective asked Raines as a favor to return to Florida with his mother to show him the gun’s location. Washburn offered to pay for gas and a hotel. He suggested that after Raines took him to the spot where he threw the gun, the detective could get “you all out of here.” Washburn insisted that it would demonstrate Raines’s good faith and that it would go a long way with the state attorney’s office. Washburn *425 employed a rase to discourage Raines from cleaning their rental car of any possible evidence. Washburn urged Raines to leave with his mother as soon as possible; the phone call took place at 3:00 p.m., and the detective inquired whether Raines and his mother could be on the road by 5:00 or 6:00 p.m. that same night. Washburn asked them as soon as they arrived the next day to report directly to the Cocoa Police Department to immediately look for the gun; then he’d cut them all loose to the hotel.
With these additional facts before the trial court, the question presented was whether the statement should be admitted after considering the investigator’s behavior. Raines contended the actions of Washburn violated his due process rights. The trial court articulated reasons for suppressing the statement after listening to the testimony at the hearing. It ruled that Raines’s statements were rendered involuntary by tactics that misled defense counsel in order to obtain admissions without benefit of legal advice. The court explained:
The only armor between an individual suspected of a crime and the formidable power of the State is legal counsel. A lawyer is bound by a strict code of ethics and conduct and is an officer of the Court. While the law allows latitude and use of deception and untrue statements as an investigative technique speaking to a suspect not in custody and unrepresented, the rule changes when the interrogator knows the suspect has availed himself of his right to counsel. The interrogator misled Raines’s attorney to get admissions without benefit of legal advice based upon the true status of Defendant. The Detective even tried to entice Raines to return to Florida under false pretenses in the presence of Raines’s attorney. This practice is condemned by this Court and renders the statements involuntary.
The comments of the majority notwithstanding, rulings by the Florida Supreme Court are dispositive in this case. In Halliburton v. State, 514 So.2d 1088, 1090 (Fla.1987), the court quoted Justice Stevens’ dissent from Moran v. Burbine, 475 U.S. 412, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986): “Any ‘distinction between deception accomplished by means of an omission of a critically important fact and deception by means of a misleading statement, is simply untenable.’ ” Haliburton, 514 So.2d at 1090, quoting Burbine, 475 U.S. at 453, 106 S.Ct. 1135. As Justice Stevens so aptly expressed in Burbine:
[D]ue process requires fairness, integrity, and honor in the operation of the criminal justice system, and in its treatment of the citizen’s cardinal constitutional protections.... Police interference in the attorney-client relationship is the type of governmental misconduct on a matter of central importance to the administration of justice that the Due Process Clause prohibits.... Burbine, 475 U.S. at 467, 106 S.Ct. 1135.
In Walls v. State, 580 So.2d 131, 133 (Fla.1991), the Florida Supreme Court, again quoted the above paragraph from Burbine. Further, the court quoted from Scull v. State, 569 So.2d 1251 (Fla.1990): “The term ‘due process’ embodies a fundamental conception of fairness that derives ultimately from the natural rights of all individuals.”
Washburn’s conduct embodies the improper use of subterfuge and deception to gain information for the prosecution’s case. Detective Washburn deceived Raines’s counsel by portraying his client as a witness and not as the undisputed suspect in the murder investigation. The elaborate scheme involved many misleading statements and included threatening and intimi *426 dating Ginter to mislead Raines. The deception interfered with the attorney-client relationship and rendered the statements involuntary. The detective’s conduct violated due process and was a deliberate attempt to interfere with Raines’s ability to obtain effective assistance of counsel. It deprived Raines of his constitutional protections. Whether Attorney Smith was bamboozled or inept does not diminish Raines’s right to protection under the law. This court should neither countenance nor encourage such police behavior.
I would affirm the trial court’s suppression of Raines’s statements.