926 So.2d 1156 (2006)
Frank A. WALLS, Appellant,
v.
STATE of Florida, Appellee.
Frank A. Walls, Petitioner,
v.
James R. McDonough, etc., Respondent.
Nos. SC03-633, SC03-1955.
Supreme Court of Florida.
February 9, 2006.
Rehearing Denied April 7, 2006.
*1160 Harry P. Brody of Brody and Hazen, P.A., Tallahassee, FL, for Appellant/Petitioner.
*1161 Charles J., Crist, Jr., Attorney General, and Charmaine M. Millsaps, Assistant Attorney General, Tallahassee, FL, for Appellee/Respondent.
PER CURIAM.
Frank A. Walls appeals an order of the circuit court denying his motion for postconviction relief under Florida Rule of Criminal Procedure 3.851 and petitions the Court for a writ of habeas corpus. We have jurisdiction. See art. V, § 3(b)(1), (9), Fla. Const. For the reasons explained below, we affirm the trial court's denial of postconviction relief and deny the petition for habeas relief.

FACTS AND PROCEDURAL HISTORY
Frank A. Walls was convicted of felony murder in the death of Edward Alger and premeditated and felony murder in the death of Ann Peterson in Okaloosa County in July 1987. Alger's and Peterson's bodies were discovered in Alger's home when he failed to report for duty at Eglin Air Force Base. Peterson was shot twice in the head; Alger was shot three times and his throat had been cut. Alger's feet and left wrist were also tied with a curtain cord.
Based on information given to investigators by Walls' former roommate, who lived adjacent to the victims, a warrant was obtained to search the mobile home where Walls lived with a roommate. During the search, several items were seized that were linked to the crime scene.
After his arrest, Walls gave a statement detailing his involvement in the murders. In his confession, Walls stated that he entered the house to commit a burglary and that he deliberately woke up the two victims by knocking over a fan. Walls made Peterson tie up Alger and then Walls tied up Peterson. At some point, Alger got loose from the bindings and attacked Walls. Walls tackled Alger and cut him across the throat with a knife. However, Alger continued to struggle, knocked the knife from Walls' hand, and bit Walls on the leg. Walls then pulled out a gun and shot Alger in the head several times. Walls untied Peterson and informed her that he did not originally intend to harm them, but Alger's attack had changed everything. During a struggle, Walls ripped off Peterson's clothes and shot her in the head. When Peterson continued to scream, Walls pushed her face into a pillow and shot her in the head a second time.
During pretrial detention, a correctional officer named Vickie Beck was asked to conduct a surveillance of Walls, because he was suspected of being involved in other murders. Beck approached Walls and assured him that anything he said to her would remain confidential. She also insisted that Walls not tell his attorney about their conversations. Beck took detailed notes of Walls' statements and behavior, which she gave to the State and the State's psychiatrists.
During a pretrial hearing to determine Walls' competency to stand trial, three experts testified that Walls was incompetent. Two other experts testified that Walls was competent to stand trial. The two experts who found Walls competent to stand trial had relied on Beck's notes in making their evaluations. The trial judge found Walls competent to stand trial and he was subsequently found guilty on all charges. The jury recommended a life sentence for Alger's murder and a death sentence for Peterson's murder. The trial court followed the jury's recommendations.
On appeal, Walls argued that Officer Beck's activities during his pretrial detention violated his constitutional right to due process. This Court determined that the *1162 State's tactics involved subterfuge and trickery and the information obtained by Officer Beck should have been excluded from all aspects of Walls' trial, including the competency determination. We also concluded that the police conduct constituted an illegal interference with Walls' attorney-client relationship. Thus, we reversed Walls' judgments and sentences and remanded for a new trial on all issues. We also ordered that any further mental health evaluations not be conducted by the experts who had received the information obtained through police subterfuge. See Walls v. State, 580 So.2d 131, 132-35 (Fla. 1991).
At Walls' retrial, venue was moved to Jackson County because of pretrial publicity. The State's guilt phase evidence consisted of physical evidence, testimony by the investigating officers, testimony by a pathologist, and Walls' taped confession, which was played for the jury. Walls presented no guilt phase case. The jury found Walls guilty on all chargestwo counts of first-degree murder, burglary of a structure, armed burglary of a dwelling, and two counts of kidnapping and petit theft.
During the penalty phase, Walls presented evidence of his long history of violent and threatening behavior, his various emotional problems, and his extensive treatment for emotional problems, including placement in a class for emotionally handicapped students in elementary school and a stay in a residential youth camp for children with emotional and behavioral problems at age fifteen. A psychiatrist who had treated Walls when he was sixteen years old stated that he had placed Walls on lithium in order to control his bipolar mood disorder. However, the psychiatrist also testified that at some point Walls ceased taking the drug. A psychologist testified that Walls' IQ had declined substantially in the years prior to trial and that Walls was impaired during the time the murder was committed.
The jury recommended the death penalty for Peterson's murder by a unanimous vote. Because of the prior jury's recommendation of life, double jeopardy precluded the possibility of a death penalty for Alger's murder on retrial. See Walls v. State, 641 So.2d 381, 386 n. 1 (Fla.1994); see also art. I, § 9, Fla. Const. The judge sentenced Walls to death for Peterson's murder, to a life sentence for Alger's murder, to five years in prison for the burglary of a structure, to twenty years for the armed burglary of a dwelling, to twenty years for each of the kidnapping counts, and to two months for petit theft. The judge found six aggravating factors: Walls was previously convicted of a violent felony based on the contemporaneous murder of Alger; the murder was committed during the course of a burglary or kidnapping; the murder was committed for pecuniary gain; the murder was especially heinous, atrocious, or cruel (HAC); and the murder was committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification (CCP). Walls, 641 So.2d at 386. The judge also found nine mitigating factors: Walls had no significant criminal history, was nineteen years old at the time of the crime, is emotionally handicapped, suffers from brain dysfunction and brain damage, functions at the level of a twelve year old because of his low IQ, confessed to the crimes and cooperated with the police, has a loving relationship with his parents and his disabled sibling, is a good worker, and has exhibited kindness toward helpless people and animals. Id. The judge specifically rejected the existence of the statutory mental mitigators. Id.
On appeal, Walls raised nine issues as error. He claimed: (1) the trial court *1163 should have excused a potential juror for cause or granted the defense an additional peremptory challenge to excuse the juror; (2) the State improperly exercised peremptory challenges to dismiss two black jurors based on their race; (3) the jurors were kept in session for overtaxing hours during trial; (4) the trial court gave the jury erroneous penalty phase instructions on the mitigating factors of mental disturbance, impairment, or duress and on the aggravating factors of HAC and CCP; (5) the trial court refused to provide the jury with a detailed interpretation of emotional disturbance as a mitigating factor; (6) the trial court made errors in its findings on the aggravating factors because HAC and CCP were not proven beyond a reasonable doubt, the evidence did not support the conclusion that the murder occurred during a kidnapping, the commission during a burglary aggravating factor impermissibly doubled the pecuniary gain factor, and the avoid arrest aggravator was improper; (7) the trial court required Walls to prove the mitigating factors by a preponderance of the evidence; (8) the trial court improperly rejected expert testimony that Walls was suffering from extreme emotional disturbance and substantial impairment; and (9) the death sentence was not proportionate in his case. This Court found no error and affirmed the judgment and sentences. Id. at 391. The United States Supreme Court subsequently denied Walls' petition for certiorari. See Walls v. Florida, 513 U.S. 1130, 115 S.Ct. 943, 130 L.Ed.2d 887 (1995).
Walls filed a motion to vacate his judgment and sentences in 1997, which he amended in 1997 and again in 2001. Walls' second amended motion to vacate is the subject of the instant appeal.[1] The trial court conducted a Huff[2] hearing in May 2002 and granted an evidentiary hearing on several of Walls' postconviction claims that trial counsel was ineffective for failing to object to certain evidence and to various arguments and comments by the prosecutor and for conceding guilt and eligibility for the death penalty without his consent. The trial court did not grant an evidentiary hearing on the remainder of Walls' allegations of ineffective assistance of counsel, including counsel's failure to present expert testimony regarding the effect that Ritalin and other drugs had on Walls' behavior. However, the trial court allowed Walls to present additional information and evidence on the Ritalin issue in the form of an expert report on the effects of Ritalin. After reviewing the report, the trial court ruled that Walls had not met the prejudice prong of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and denied an evidentiary hearing on the Ritalin claim. The trial court also denied Walls' request for a Positron Emission Tomography (PET) scan to support his claim that counsel was *1164 ineffective for failing to perform further medical testing in order to diagnose brain damage. The court did agree to hold this matter under advisement pending the testimony offered at the evidentiary hearing. The remainder of Walls' postconviction claims were summarily denied either as procedurally barred because not raised on direct appeal, refuted by the record, or not proper in a motion for postconviction relief.
During the January 2003 evidentiary hearing, Walls' trial attorneys testified as to their trial strategy, their recollection of the trial, and their conversations with Walls. Following the evidentiary hearing, the trial court denied relief on all of the claims. The trial court found that counsel's performance was not deficient and cited to specific testimony from the evidentiary hearing and the record of the trial to support this conclusion. The trial court also attached extensive excerpts from the trial record in support of its findings. In those few instances where there was some question as to counsel's performance, the trial court concluded that Walls had not met the prejudice prong of Strickland. The trial court also denied Walls' request to present testimony by the Ritalin expert and to conduct a PET scan, finding that Walls had failed to establish prejudice on these claims as well.
Walls appeals the trial court's denial of postconviction relief. He has also filed a petition for habeas relief with this Court.

RULE 3.850 MOTION ON APPEAL
Walls raises two claims relating to the trial court's denial of his motion for postconviction relief. These two claims actually encompass a number of subclaims. First, Walls contends that the trial court erred in denying various claims of ineffective assistance of counsel following an evidentiary hearing on the claims. Second, he contends that the court erred in denying him an evidentiary hearing on his other claims of ineffective assistance of counsel and a claim that his death sentence is improper because he is mentally retarded. We address each claim and subclaim in turn below.
In order to prevail on a claim of ineffective assistance of counsel, a defendant must show that counsel's performance was deficient and that the deficient performance prejudiced the defendant so as to deprive him of a fair trial. See Strickland v. Washington; see also Wiggins v. Smith, 539 U.S. 510, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003) (reaffirming the Strickland two-prong analysis for claims of ineffective assistance of counsel). In reviewing counsel's performance, the court must be highly deferential to counsel, and in assessing the performance, every effort must "be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689, 104 S.Ct. 2052; see also Rivera v. Dugger, 629 So.2d 105, 107 (Fla.1993). As to the first prong, the defendant must establish that "counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687, 104 S.Ct. 2052; see also Cherry v. State, 659 So.2d 1069, 1072 (Fla.1995). For the prejudice prong, the reviewing court must determine whether there is a reasonable probability that, but for the deficiency, the result of the proceeding would have been different. See Strickland, 466 U.S. at 694, 104 S.Ct. 2052; see also Valle v. State, 705 So.2d 1331, 1333 (Fla.1997). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S.Ct. 2052. *1165 "Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable." Strickland, 466 U.S. at 687, 104 S.Ct. 2052.

Claims Denied After an Evidentiary Hearing
Generally, this Court's standard of review following the denial of a postconviction claim where the trial court has conducted an evidentiary hearing affords deference to the trial court's factual findings. McLin v. State, 827 So.2d 948, 954 n. 4 (Fla.2002). "As long as the trial court's findings are supported by competent substantial evidence, `this Court will not substitute its judgment for that of the trial court on questions of fact, likewise of the credibility of the witnesses as well as the weight to be given to the evidence by the trial court.'" Blanco v. State, 702 So.2d 1250, 1252 (Fla.1997) (quoting Demps v. State, 462 So.2d 1074, 1075 (Fla. 1984)). Walls claims that counsel rendered ineffective assistance in at least four separate instances during his trial, including failure to exclude and object to the admission of evidence of a possible sexual battery, failure to object to a lack of remorse argument by the prosecutor during closing argument, concession of guilt to the facts of felony murder and to the aggravating factor of commission during a burglary, and failure to object to a number of other prosecutorial comments and arguments.

Sexual Battery Evidence
At trial, one of the crime scene investigators testified that a sexual battery kit was used to collect blood and saliva samples from Walls in order to determine whether he was a blood contributor on clothing found in his residence. Walls contends that counsel should have objected to the mention of the sexual battery kit because the jury may have inferred that Walls committed an uncharged sexual battery. However, both the trial transcript and the evidentiary hearing testimony of counsel support the trial court's conclusion that the jury was "well aware of the purpose of the collection of samples from the defendant" and that the exhibits in question had nothing to do with a sexual battery. The investigator only mentioned the sexual battery kit during two lines of his testimony when he was identifying the samples taken from Walls. The record clearly shows that there was no allegation, nor even an implication, that a sexual battery had been committed on Peterson. Thus, counsel's failure to object to this testimony did not constitute deficient performance and Walls is not entitled to relief on this claim.
Walls also claims that counsel was ineffective for failing to make a motion in limine and failing to object at trial to questions and references to a possible sexual battery against victim Peterson which were contained in Walls' taped confession that was played to the jury at trial. The lower court found that counsel's decision not to object or file a motion in limine was a well-reasoned tactical decision because the portion of the tape in which Walls was questioned about a potential sexual battery demonstrated his remorse and confusion and supported the defense theory of a "burglary gone bad." Several times during the tape the investigator asked Walls if he had sex with Peterson. Each time Walls responded that he did not know. When the investigator asked Walls if he entered the residence for money or for sex, he responded that he went in to get a few dollars. He also stated that he had no intent to harm the victims but his plan fell *1166 apart when Alger loosened his bonds and attacked him.
During the evidentiary hearing, trial counsel Earl Loveless testified that it was clear to both sides that no sexual battery had occurred and that the State conceded this point. Loveless also testified that it was a strategic decision not to make objections to this material because it was clear to the jury that no sexual battery had occurred. Trial counsel James Sewell explained that he wanted the jury to hear the entire taped statement because it reflected a "sobbing, crying, remorseful, and repentant" defendant. Sewell also noted that Walls exhibited confusion and emotional distress when he was questioned about a possible sexual battery. Counsel regarded the tape as useful in proving mitigation and bolstering the defense theory of a "burglary gone bad." Both Loveless and Sewell testified that sexual battery was a "non-issue" and that the jury clearly understood this.
The record clearly supports the trial court's conclusion that counsel made a tactical decision not to redact Walls' taped confession because the tape in its entirety helped prove the defense's theory of the case. Thus, Walls is not entitled to relief on this claim.

Prosecutor's Closing Argument
Walls also claims that counsel was ineffective for failing to object to two comments by the prosecutor during his closing argument. The two comments include the prosecutor's statement that Walls never expressed remorse for the killings and an implication that Walls would have harmed the witness who testified about what she heard during the killings if she had gone over to the victims' trailer to investigate. The trial court ruled that the prosecutor's lack of remorse comment was not an improper comment but an invited response based on defense counsel's closing argument. As to the prosecutor's comment about the witness, the court concluded that defense counsel made a tactical decision to maintain a "low-key" defense and not object too frequently. However, the court concluded if counsel was deficient in this regard, Walls failed to establish prejudice from counsel's failure to object.
During closing argument, defense counsel argued that Walls' sobbing and tearful statements on the taped confession showed that he did not premeditate the murders and was sorry for what had happened. In response, the prosecutor commented that Walls only expressed concern for himself and how his life had been ruined and never stated that he was sorry for the victims. The prosecutor argued that Walls could have stopped the incident after he injured Alger, but instead went on to kill both victims. This record supports the trial court's conclusion that the prosecutor's comment was an invited response and did not constitute an improper comment. A prosecutor's comments are not improper where they fall into the category of an "invited response" by the preceding argument of defense counsel concerning the same subject. See Barwick v. State, 660 So.2d 685, 694 (Fla.1995); Dufour v. State, 495 So.2d 154, 160 (Fla.1986); see also Sorey v. State, 463 So.2d 1225 (Fla. 3d DCA 1985) (rejecting ineffective assistance claim for failure to object to prosecutor's closing argument which constituted a fair response to defense counsel's comments). Thus, we agree with the trial court that Walls is not entitled to relief on this claim.
Walls also argues that defense counsel was ineffective for failing to object to the prosecutor's closing argument in which he implied that had Amy Touchton become an eyewitness by going over to the trailer during the incident Walls would have killed her. During closing argument, *1167 the prosecutor noted that Walls had stated that he "didn't want any witnesses" when asked about Peterson's murder during his taped statement. The prosecutor then reminded the jury to "think about Amy Touchton, remember Amy Touchton. She said she almost went over there and knocked on the door. Maybe she would have been a witness. Frank wasn't going to have any witnesses." Walls' counsel offered no objection to this comment. When trial counsel Loveless was asked about this statement at the evidentiary hearing, he had no independent memory of the argument but offered a number of reasons why he would not have objected to the statement, including the context in which it was said, what he might have said to trigger the comment, how innocuous or important he felt the comment was, and whether he had previously objected to anything else in the prosecutor's argument.
Much of the defense's closing argument at trial focused on the discrepancy between Walls' taped statement in which he stated that Peterson's screams caused him to fire the second fatal shot into her head and Touchton's testimony that she did not hear any female screams or a female voice at all. Defense counsel argued that Touchton's testimony that she heard three gunshots followed by a man's voice saying "no, no, no" indicated that Walls was not a cold-blooded killer and the "no, no, no" was Walls expressing his remorse about shooting Alger.
We agree with Walls that the prosecutor's speculative comment about what Walls might have done to Touchton was improper. However, even if counsel's failure to object to this comment was deficient performance, Walls cannot show how he was prejudiced by this one comment. In order to require a new trial based on improper prosecutorial comments, the prosecutor's comments must
either deprive the defendant of a fair and impartial trial, materially contribute to the conviction, be so harmful or fundamentally tainted as to require a new trial, or be so inflammatory that they might have influenced the jury to reach a more severe verdict than that it would have otherwise.
Spencer v. State, 645 So.2d 377, 383 (Fla. 1994). The improper comment in this case does not approach this level. See, e.g., Brooks v. State, 762 So.2d 879 (Fla.2000) (finding that a new penalty phase proceeding before a new jury was required based on the prosecutor's closing argument that included dehumanizing comments about the defendants, a statement that the jury should show the defendants the same mercy they showed the victim, a "prosecutorial expertise" argument that cloaked the State's case with legitimacy as a bona-fide death penalty prosecution, a misstatement of the law regarding the weight given merged aggravators, an argument that the jury had a sworn duty to come back with a determination of death, a denigration of the mitigation evidence offered by the defendants, and personal attacks on the defense counsel). Thus, we agree with the trial court that Walls has not met the Strickland prejudice prong on this claim and is not entitled to relief.

Concession of Guilt
Walls alleges that trial counsel conceded his guilt to felony murder and conceded the existence of the aggravating circumstance of a murder committed during the course of a felony without his consent. The trial court found that counsel discussed these concessions as trial strategy with Walls and that Walls specifically agreed to this strategy. Thus, the court concluded, trial counsel did not render ineffective assistance of counsel in making these concessions. We find competent, *1168 substantial evidence to support these findings.
At the evidentiary hearing, both of Walls' attorneys testified that they discussed the trial strategy of conceding guilt to felony murder with Walls on numerous occasions and that Walls both understood and specifically agreed to this strategy. Walls testified that he never agreed to concede guilt or to concede any of the aggravating factors, that he did not understand counsels' trial strategy, and that he did not discuss strategy with counsel. However, upon questioning by the judge, Walls described his understanding of the trial strategy as a "robbery gone awry" argument, that is, he entered the victims' trailer with the intent to steal from them but without any intent to kill them. Thus, Walls description of what he thought the trial strategy would be is exactly the trial strategy presented by his counsel.
Moreover, even if Walls' testimony had been in direct conflict with the testimony of his attorneys, we would still recognize the trial court's superior vantage point in assessing the credibility of witnesses. See Chandler v. State, 848 So.2d 1031, 1041 n. 11 (Fla.2003) (affirming denial of postconviction relief on a similar claim of conceding guilt where court found trial counsel's testimony to be more credible than that of the defendant, who "waffled" on whether he agreed to the strategy in his testimony); see also Stephens v. State, 748 So.2d 1028, 1034 (Fla.1999) (recognizing trial court's superior vantage point in assessing credibility of witnesses). Thus, we affirm the trial court's denial of postconviction relief on this claim.

Other Comments and Argument by the Prosecutor
Walls contends that trial counsel was ineffective for failing to object to a number of the prosecutor's other comments and arguments, including a future dangerousness argument, a comment that Walls did not attend church, a statement that the jury would have to find the prior violent felony aggravator in light of the double murder, a characterization of Walls' bipolar disorder as a "mood swing," and an argument that Walls should be executed because he lacked the will to be a good person and because of his mental illness. The record shows that the comments in question either were not objectionable, were recounting of witness testimony, or were actually objected to by trial counsel.
The trial court found that the "future dangerousness," "mood swing," and "lacked the will to be a good person" comments were actually the prosecutor's recounting of the penalty phase testimony by defense expert psychiatrist Dr. Eugene Valentine. Dr. Valentine had characterized bipolar disorder as involving mood swings between depression and mania. Dr. Valentine had also stated that medication for bipolar disorder would not solve Walls' problems unless he had "the will and desire to conform to society's ways, and to be productive, and to be a good person, to have values and live by them." Additionally, Dr. Valentine had testified that Walls had a history of threatening people, including threatening the hospital staff and Dr. Valentine during his treatment. Dr. Valentine explained that "this was in character when [Walls] felt his wants, needs, and desires were not being gratified and somebody was frustrating his wants, needs, and desires, he would resort to threatening." In Dr. Valentine's estimate, Walls' "wants, needs, and desires exceeded his willingness to conform to society's rules and regulations." The prosecutor's comments on these points were not improper argument, but a summary of this testimony by the defendant's own expert. Thus, Walls is not entitled to relief on these claims.
*1169 Walls also alleges that trial counsel was ineffective for not objecting to the prosecutor's comments on the mitigating evidence that had been presented by the defense. During closing argument, the prosecutor summarized the mitigating evidence that had been presented to the jury and argued that the jury did not find out about Walls at the time of the crime, including "what kind of values Frank had, what was his idea of right and wrong, did he go to church, was he the kind of person to stand up for what's right and put aside what was wrong, who were his friends, where did he go at night." Walls contends that these comments by the prosecutor constituted nonstatutory aggravating factors. We do not agree. The prosecution cited these examples to make the point that the mitigating evidence presented by the defense left gaps in the picture of Walls' life and who he was at the time of the crime. Thus, we agree with the trial court that the comments were not improper and counsel was not ineffective for failing to object to them.
Finally, Walls claims that trial counsel was ineffective for failing to object to the prosecutor's argument that that the jury would have to find the prior violent felony aggravator because this was a double murder. However, trial counsel did in fact object to the prosecutor's statement of the law regarding the jury's obligation in finding the aggravating factors. In response, the trial court directed the prosecutor to inform the jury that while they could consider this as an aggravating factor, they were under no obligation to do so. The prosecutor complied. Thus, trial counsel cannot be deemed ineffective for objecting to a misstatement of the law that was corrected in response to counsel's objection. Walls is not entitled to relief on this claim.

Claims Denied Without an Evidentiary Hearing
The trial court denied a number of Walls' other postconviction claims without an evidentiary hearing. As a general proposition a defendant is entitled to an evidentiary hearing on a motion for postconviction relief unless (1) the motion, files, and records in the case conclusively show that the prisoner is entitled to no relief, or (2) the motion or a particular claim is legally insufficient. See, e.g., Maharaj v. State, 684 So.2d 726 (Fla.1996); Anderson v. State, 627 So.2d 1170 (Fla. 1993); Fla. R.Crim. P. 3.850. The defendant bears the burden of establishing a prima facie case based upon a legally valid claim. Mere conclusory allegations are not sufficient to meet this burden. See Kennedy v. State, 547 So.2d 912 (Fla.1989). However, in cases where there has been no evidentiary hearing, the Court must accept the factual allegations made by the defendant to the extent that they are not refuted by the record. See Peede v. State, 748 So.2d 253 (Fla.1999); Valle v. State, 705 So.2d 1331 (Fla.1997). This Court must examine each claim to determine if it is legally sufficient, and, if so, determine whether or not the claim is refuted by the record.
Walls claims that the trial court erred in denying him an evidentiary hearing as to five separate claims of ineffective assistance of counsel during the penalty phase proceedings. Walls alleges that counsel failed to present expert testimony on the effects of Ritalin, a pharmacologist's testimony about the effects of Walls' drug and alcohol use, an adequate mental health evaluation including a PET scan to show brain damage, and lay testimony on mitigation, and that counsel should have filed a motion asserting that the death penalty was barred by double jeopardy because retrial was caused by the prosecutor's misconduct. *1170 Walls also contends that his death sentence is improper because he is mentally retarded. We address each claim in turn below.

Ineffective Assistance of Counsel
As discussed above, claims of ineffective assistance of counsel are assessed under the two-prong standard set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In order to prevail on a claim of ineffectiveness, a defendant must show that counsel's performance was deficient and that the deficient performance prejudiced the defendant so as to deprive him of a fair trial. Id.
Walls claims that trial counsel was ineffective for failing to present expert testimony at trial regarding the effects of Ritalin on his actions and his mental health. After the Huff hearing, the trial court gave Walls the opportunity to present additional evidence from a medical professional who had examined Walls and could testify that Ritalin had some effect on him at the time of the murders or at the time of trial. Walls submitted a report by Dr. Peter Breggin, a psychiatrist with special expertise on the effects of encephalitis on the brain and behavior and on the use of stimulants in the treatment of hyperactivity. Dr. Breggin concluded that Walls' long-term ingestion of Ritalin for hyperactivity would have compounded his recovery from meningoencephalitis at age twelve and would have made him vulnerable to paranoia and violence. While acknowledging that Dr. Breggin was qualified as an expert in this area, the trial court noted that Dr. Breggin did not disagree with the diagnosis and findings presented by the three defense experts who testified at trial.[3] Thus, the trial court concluded, Dr. Breggin's testimony was cumulative to that presented at trial and Walls was not entitled to relief because he could not show that he suffered any prejudice from counsel's failure in this regard. We agree with the trial court and affirm the summary denial of postconviction relief on this claim.
Walls also contends that trial counsel was ineffective for failing to obtain further medical testing to confirm that he suffered from brain damage. In order to support this claim, Walls filed a motion to conduct a PET scan. This motion was discussed at the outset of the postconviction evidentiary hearing and the court decided to hold the motion under advisement until the end of the evidentiary hearing. During the evidentiary hearing, trial counsel Loveless testified that he was aware of the PET scan and its uses at the time of trial, but did not have the test conducted because the defense experts indicated that the scan would not show anything that their testing had not already shown. Trial counsel Sewell testified that neuropsychologist Dr. Karen Hagerott informed him that her test results were sufficiently conclusive on the issue of Walls' neurological deficits and that further testing was unnecessary. At the close of the evidentiary hearing, the trial court denied Walls' request for a PET scan. The court found that the evidence presented in the guilt and penalty phases informed the jury that Walls suffers from a brain disorder and a mental disorder, that the defense experts had advised trial counsel that the scan was not necessary, and that a PET scan would not reveal anything that the experts' tests had not already shown. Thus, the trial court concluded, the jury had received the evidence that a PET scan could have revealed *1171 and the jury had considered those findings in their sentencing decision.
A trial court's decision to deny a defendant's motion for a PET scan will not be disturbed absent an abuse of discretion. See Rogers v. State, 783 So.2d 980, 998 (Fla.2001). In evaluating whether the trial court abused its discretion, this Court generally looks at two factors. First, before the trial court will provide a defendant with the necessary funds for a PET scan, the defendant must establish a particularized need for the test, that is, that the test is necessary for experts to make a more definitive determination as to whether the defendant's brain is functioning properly and to provide their opinions about the extent of the defendant's brain damage. Id. at 999. Second, this Court must consider whether the defendant was prejudiced by the trial court's denial of the motion requesting a PET scan. Id. In Robinson v. State, 761 So.2d 269, 275-76 (Fla.1999), this Court concluded that the trial court did not err in denying the defendant's motion for a Single Photon Emission Computed Tomography (SPECT) scan because the results of the scan would only have "confirmed the doctors' already established opinions, which were substantially accepted by the trial court." In the instant case, Walls did not show a particularized need for the PET scan, nor could he establish prejudice from the trial court's denial of his motion. Thus, we find that the trial court did not abuse its discretion in denying Walls' postconviction motion for a PET scan.
Walls also claims that his trial counsel was ineffective for failing to conduct a PET scan at the time of trial in order to support the mitigating factor of brain damage. However, both of Walls' trial counsel testified that the defense mental health experts advised them that this test was not necessary. Further, any results that the PET scan might have revealed were already presented to the jury by the defense experts. Psychiatrist Dr. Eugene Valentine testified that Walls suffered from bipolar disorder and the conduct disorder of socialized aggression. Dr. Valentine also testified that he had performed a Computerized Axial Tomography scan and two electroencephalograms on Walls in 1985. Psychologist Dr. Edward Chandler testified that his testing was suggestive of mild cerebral dysfunction or brain damage. Neuropsychologist Dr. Hagerott testified that Walls has significant neuropsychological deficits, organic brain damage, and an organic personality disorder. In Walls' sentencing order, the trial court found as nonstatutory mitigating evidence that Walls suffers from apparent brain dysfunction and brain damage, has a low IQ, and was classified as emotionally handicapped. Walls, 641 So.2d at 386. Thus, Walls failed to show either deficient performance or prejudice on this claim and is not entitled to relief.
The trial court also denied an evidentiary hearing on Walls' claim that trial counsel was ineffective for failing to present testimony from a pharmacologist regarding the effects of Walls' drug and alcohol abuse. The trial court concluded that the record refuted this claim since defense witness Dr. Hagerott testified about Walls extensive drug and alcohol use during the penalty phase of Walls' trial. Dr. Hagerott testified that her interview of Walls revealed
[a] very strong history of drug use that included speed, acid, cocaine, heroin, hash, marijuana, alcohol. His use of speed and acid were the heaviest drugs he used, and his alcohol use by his late teens was in my opinion quite severe. He was drinking daily. He told me that he would drink a whole case of beer or a whole bottle of liquor at one time, so *1172 there was real severe drug and alcohol abuse in this individual.
Thus, trial counsel did present this mitigating evidence to the jury and any testimony by a pharmacologist would have been cumulative. Accordingly, Walls has shown neither deficient performance nor prejudice from this alleged failure by counsel, as required under Strickland.
Walls claims that counsel provided ineffective assistance by failing to present lay mitigation testimony about his life. The trial court concluded that this allegation was conclusively rebutted by the record, noting that evidence of Walls' life history was presented to the jury during the penalty phase of the trial. Walls contends that the jury did not hear evidence relating to his early life, sexual abuse,[4] use of legal and illegal drugs, alcohol problems, or the full story of the afflictions and illnesses he suffered from, including several high fevers, viral meningitis, migraines, hyperactivity, and emotional and behavioral problems.
While an attorney has a duty to conduct a reasonable investigation for possible mitigating evidence, see Jones v. State, 855 So.2d 611, 618 (Fla.2003); Rose v. State, 675 So.2d 567, 571 (Fla.1996), the record on direct appeal in this case demonstrates that Walls' trial counsel fulfilled that duty and refutes this postconviction claim. Counsel presented a great deal of mitigating evidence during the penalty phase, including testimony from three mental health experts who recounted a life history of mental, emotional, and medical problems. These experts testified that Walls: was a "blue baby" at birth, indicating decreased oxygen which could have damaged his brain; had been diagnosed with attention deficit hyperactivity disorder in first grade and placed on Ritalin which he took until he was thirteen years old; had been placed in an emotionally handicapped class in elementary school based on his explosive violent behavior and mood swings; had attended a residential program for children with emotional and behavioral problems for one year; functions at a low level academically and had a delay in his early language skills; contracted viral meningitis at age twelve and suffered from severe headaches thereafter; had mild cerebral dysfunction or organic brain damage, significant paranoid thinking, impulsive acting out, pronounced emotional and social insecurity, low self-esteem, and mild psychosis under stress; suffers from bipolar disorder and socialized, aggressive conduct disorder; had a history of stealing, destroying property, and threatening others; and had a significant history of drug and alcohol use. Various family friends testified that Walls had been hyperactive and easily distracted since he was a toddler. Walls' parents confirmed his history of hyperactivity, violent rages, and emotional and medical problems. Based on this testimony and evidence, the trial court found a number of nonstatutory mitigating circumstances to be applicable to Walls, including being emotionally handicapped, having brain dysfunction caused by slight brain damage, experiencing a decrease in his IQ from average at school age to low normal at the time of trial, being extremely immature with the behavioral control of a middle or late elementary school child, and functioning intellectually at the age of twelve or thirteen.
Thus, all of the life history alleged in Walls' postconviction motion was presented to the jury during the penalty phase. *1173 This record conclusively shows that Walls was not entitled to an evidentiary hearing on this claim and the trial court properly denied relief.
Walls also claims that trial counsel should have moved for a life sentence on retrial based on an alleged double jeopardy violation and should have called the doctors who testified favorably for him at his first trial. In Walls' initial direct appeal, this Court held that the State's improper use of subterfuge to obtain psychiatric information from Walls while he was incarcerated prior to trial precluded the use of this information at trial and required reversal of Walls' convictions and sentence. Walls v. State, 580 So.2d 131, 135 (Fla.1991). Furthermore, we ruled that any psychiatric testing or evaluations on retrial could not rely directly or indirectly on the information obtained by the officer. Thus, "to eliminate the taint, any such evaluations shall not be conducted by the experts who previously received the information taken as a result of the police subterfuge." Id. at 135. Walls argues that the State's misconduct prevented him from using the doctors of his choice on retrial and that his trial counsel should have objected, proffered the testimony of his experts from the first trial, and preserved the issue for appeal. He also contends that counsel should have moved for imposition of a life sentence because the remand was caused solely by the prosecution's improper conduct.
The State's improper conduct occurred in the first trial and resulted in a new trial on all of the issues. Id. On retrial, Walls was not eligible for the death penalty for the murder of Alger because the first jury had recommended life. Walls, 641 So.2d at 386 n. 1 ("Because of the prior trial result, double jeopardy precluded the possibility of a death penalty for the murder of Alger on retrial."). Thus, double jeopardy did preclude the death penalty for this crime since Walls had received a life sentence from the factfinder. See Bullington v. Missouri, 451 U.S. 430, 446, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981) ("Because the sentencing proceeding at petitioner's first trial was like the trial on the question of guilt or innocence, the protection afforded by the Double Jeopardy Clause to one acquitted by a jury also is available to him, with respect to the death penalty, at his retrial."). However, the first jury had recommended a sentence of death for Peterson's murder, a recommendation which the judge followed and imposed. Because no fact-finder had acquitted Walls of the death penalty for Peterson's murder, double jeopardy did not bar imposition of the death penalty on retrial. See Sattazahn v. Pennsylvania, 537 U.S. 101, 123 S.Ct. 732, 154 L.Ed.2d 588 (2003) (finding no double jeopardy bar to new penalty phase after the first jury failed to reach a verdict on the penalty and the judge imposed a life sentence pursuant to a state statute because there were no factual findings in favor of "acquittal of the death penalty" by either the jury or the judge; explaining that an "acquittal" at a trial-like sentencing phase, rather than the mere imposition of a life sentence, is required to give rise to double jeopardy protections). Thus, trial counsel was not deficient for failing to raise this nonmeritorious claim and an evidentiary hearing was not warranted. Walls is not entitled to relief on this claim.

Mental Retardation
Finally, Walls contends that the trial court improperly denied him an evidentiary hearing on his claim that he is mentally retarded and thus not eligible for the death penalty. The trial court denied a hearing based on section 921.137, Florida *1174 Statutes (2005), the statute prohibiting imposition of the death sentence on a mentally retarded defendant in Florida. By its own terms, the statute "does not apply to a defendant who was sentenced to death prior to the effective date of this act [June 12, 2001]." Id. § 921.137(8). The trial court also concluded that the issue had been adequately tried and presented to the jury at Walls' trial.
The trial court was correct in concluding that the statute is not applicable to Walls, who was sentenced to death in July 1992. Subsequent to the trial court's decision on this claim, we adopted Florida Rule of Criminal Procedure 3.203, which permits a death-sentenced prisoner to file a motion for a determination of mental retardation even in cases where the prisoner's direct appeal is final. Because the trial court did not have the benefit of rule 3.203 when it denied Walls an evidentiary hearing on his claim of mental retardation, the court did not err in its ruling.
Under rule 3.203(d)(4)(E), a death-sentenced prisoner who has filed a postconviction motion that has been ruled on by the circuit court and has an appeal pending on or before October 1, 2004, may file a motion for this Court to relinquish jurisdiction to the circuit court for a determination of mental retardation within sixty days from October 1, 2004. Walls filed a timely motion to relinquish jurisdiction pursuant to the rule. While we denied that motion, we did so without prejudice to Walls filing a rule 3.203 motion in the circuit court pending resolution of this postconviction appeal. Thus, Walls may still file a rule 3.203 motion for a determination of mental retardation as a bar to execution in the trial court and is entitled to an evidentiary hearing on that motion. See Fla. R.Crim. P. 3.203(e).

PETITION FOR WRIT OF HABEAS CORPUS
Walls raises three claims in his petition for habeas corpus filed with this Court. He contends that (1) Florida's capital sentencing scheme is unconstitutional under Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002); (2) his death sentence is invalid under Ring because the aggravating circumstances were not charged in his indictment; and (3) appellate counsel was ineffective for failing to raise a number of claims of error in Walls' direct appeal to this Court. As explained below, Walls is not entitled to habeas relief on these claims.

Ring Claims
Walls raises two habeas claims based on the United States Supreme Court's decision in Ring. First, he claims that Florida's capital sentencing statute violates his constitutional rights under Ring and thus his death sentence must be vacated. Second, he claims that his death sentence is invalid because the aggravating factors were not charged in his indictment. We find no merit to either claim.
The United States Supreme Court's recent decision in Schriro v. Summerlin, 542 U.S. 348, 124 S.Ct. 2519, 159 L.Ed.2d 442 (2004), held that the decision in Ring is not retroactive. A majority of this Court has also concluded that Ring does not apply retroactively in Florida to cases that are final, under the test of Witt v. State, 387 So.2d 922 (Fla.1980). See Johnson v. State, 904 So.2d 400, 412 (Fla. 2005). Accordingly, Wall's Ring claims are procedurally barred in these postconviction proceedings.
However, even if the claims were not barred, they would be without merit. This Court has recognized that a defendant is not entitled to relief under the "prior-conviction exception" to Apprendi v. *1175 New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000),[5] where the aggravating circumstances include a prior violent felony conviction. See, e.g., Duest v. State, 855 So.2d 33, 49 (Fla.2003) (noting rejection of Ring claims in a number of cases involving a prior-conviction aggravator), cert. denied, 541 U.S. 993, 124 S.Ct. 2023, 158 L.Ed.2d 500 (2004); Grim v. State, 841 So.2d 455, 465 (Fla.) (explaining that defendant was not entitled to relief under Ring where aggravating circumstances of multiple convictions for prior violent felonies and contemporaneous felony of sexual battery were unanimously found by jury), cert. denied, 540 U.S. 892, 124 S.Ct. 230, 157 L.Ed.2d 166 (2003).
In the instant case, the trial court found the aggravating circumstances of a prior violent felony conviction, based on the contemporaneous murder of Alger, and that the murder was committed during the course of a burglary and a kidnapping. Walls, 641 So.2d at 386. A unanimous jury found Walls guilty beyond a reasonable doubt of these offenses, thereby satisfying the mandates of the United States and Florida Constitutions. See Kimbrough v. State, 886 So.2d 965, 984 (Fla. 2004); Doorbal v. State, 837 So.2d 940, 963 (Fla.), cert. denied, 539 U.S. 962, 123 S.Ct. 2647, 156 L.Ed.2d 663 (2003). Further, this Court has rejected similar claims that Ring requires aggravating circumstances be alleged in the indictment or to be individually found by a unanimous jury verdict. See Blackwelder v. State, 851 So.2d 650, 654 (Fla.2003); Porter v. Crosby, 840 So.2d 981, 986 (Fla.2003). Thus, Walls is not entitled to postconviction relief on his Ring claims.

Ineffective Assistance of Appellate Counsel
Walls claims that appellate counsel rendered ineffective assistance by failing to raise a number of claims as error on direct appeal. These include various comments made by the prosecutor in the guilt and penalty phases; Walls' inability to present the testimony of the mental health experts of his choice on retrial; the sentencing order did not independently weigh the aggravating and mitigating circumstances; the trial court considered improper victim impact evidence; and the jury was given unconstitutional instructions on aggravating circumstances.
Claims of ineffective assistance of appellate counsel are properly raised in a habeas petition. See Rutherford v. Moore, 774 So.2d 637, 643 (Fla.2000). The criteria for proving ineffective assistance of appellate counsel parallel the Strickland standard for ineffective trial counsel. Wilson v. Wainwright, 474 So.2d 1162, 1163 (Fla.1985). Thus, the Court must consider
first, whether the alleged omissions are of such magnitude as to constitute a serious error or substantial deficiency falling measurably outside the range of professionally acceptable performance and, second, whether the deficiency in performance compromised the appellate process to such a degree as to undermine confidence in the correctness of the result.
Teffeteller v. Dugger, 734 So.2d 1009, 1027 (Fla.1999) (quoting Suarez v. Dugger, 527 So.2d 190, 192-93 (Fla.1988)). "If a legal issue `would in all probability have been found to be without merit' had counsel raised the issue on direct appeal, the failure of appellate counsel to raise *1176 the meritless issue will not render appellate counsel's performance ineffective." Rutherford, 774 So.2d at 643 (quoting Williamson v. Dugger, 651 So.2d 84, 86 (Fla.1994)). Nor is appellate counsel "necessarily ineffective for failing to raise a claim that might have had some possibility of success; effective appellate counsel need not raise every conceivable nonfrivolous issue." Valle v. Moore, 837 So.2d 905, 908 (Fla.2002). Additionally, this Court has stated that appellate counsel cannot be ineffective for failing to raise claims which were not preserved due to trial counsel's failure to object. See, e.g., Ferguson v. Singletary, 632 So.2d 53, 58 (Fla.1993) (finding appellate counsel was not ineffective in failing to raise allegedly improper prosecutorial comments made during the penalty phase where trial counsel did not preserve the issues by objection).

Prosecutorial Comments
Walls' claims of ineffective assistance of appellate counsel involve prosecutorial comments that were not preserved by proper objection at trial. As a general rule, this Court has determined that failing to raise a contemporaneous objection when improper closing argument comments are made waives any claim concerning such comments for appellate review. See Brooks v. State, 762 So.2d 879, 898 (Fla. 2000). The sole exception to the general rule is where the unobjected-to comments rise to the level of fundamental error. See id.; Thomas v. State, 748 So.2d 970, 985 (Fla.1999).
In order for an error to be fundamental and justify reversal in the absence of a timely objection, "the error must reach down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error." Brown v. State, 124 So.2d 481, 484 (Fla. 1960); see also State v. Delva, 575 So.2d 643, 645 (Fla.1991). In order for improper comments made in the closing arguments of a penalty phase to constitute fundamental error, they must be so prejudicial as to taint the jury's recommended sentence. Thomas, 748 So.2d at 985.
The prosecutorial comments that Walls claims as fundamental error are the same ones raised in his rule 3.850 claims of ineffective assistance of trial counsel. As explained above, trial counsel did not object to some of these comments and some of the comments were not objectionable. Appellate counsel cannot be deemed ineffective for failing to raise as an issue on appeal these unpreserved improper comments. Nor do we find that the comments in question constituted fundamental error. See, e.g., Crump v. State, 622 So.2d 963, 971-72 (Fla.1993) (rejecting defendant's assertion that the prosecutor's improper comments in both the guilt and penalty phases of the trial constituted fundamental error that could be raised on appeal without proper objection at trial; comments at issue included a narrative that gained sympathy for the victim, characterization of the defense as an "octopus" that was clouding the water in order to "slither away," and two statements during the penalty phase asking the jury to return a death sentence in order to send a message to the community). Additionally, as noted above, Walls cannot prove prejudice from the comments in question because the comments either were not improper or were harmless. In one instance, trial counsel did object to the prosecutor's comments regarding the jury's obligation as to aggravating factors and the comment was corrected. Appellate counsel cannot be faulted for not raising this meritless claim on appeal. Walls is not entitled to habeas relief on this claim.

*1177 Issues Caused by Retrial

Walls claims that he was denied due process by the prosecution's misconduct in giving psychiatric information to its psychiatrists through subterfuge prior to his first trial. He argues that he was denied the opportunity of presenting testimony from his own experts who had testified at his first trial. He further contends that appellate counsel should have raised this issue on appeal and argued that double jeopardy precluded the imposition of the death penalty on retrial because retrial was due to the State's misconduct.
As explained above, this improper conduct by the State was raised in Walls' initial direct appeal, and this Court remanded for a new trial on all issues because of the misconduct. Walls, 580 So.2d at 135. On retrial, Walls was not eligible for the death penalty for Alger's murder because he had been "acquitted of death" by the first jury. However, he had not been "acquitted of death" for Peterson's murder and double jeopardy did not bar the death penalty on retrial. See Sattazahn v. Pennsylvania. Walls' present double jeopardy claim has no merit.
Walls also contends that he was denied due process on retrial because he was denied the opportunity to present testimony from the experts who had testified at his first trial. This Court ruled that any psychiatric testing and evaluations presented at the retrial could not rely directly or indirectly on the information that was unlawfully obtained by the officer. "[T]o eliminate the taint, any such evaluations shall not be conducted by the experts who previously received the information taken as a result of the police subterfuge." Walls, 580 So.2d at 135. This ruling did not result in Walls being denied a mental health evaluation at his retrial. In fact, he was evaluated by a neuropsychologist before retrial, and this neuropsychologist, along with a psychologist and psychiatrist who had treated and evaluated Walls before the crime, testified on his behalf at retrial.
Ake v. Oklahoma, 470 U.S. 68, 83, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), requires that a defendant have access to a "competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense." Walls does not argue that he was denied access to mental health professionals or that these professionals failed to conduct the appropriate examinations. In fact, Dr. Hagerott testified that she conducted an extensive evaluation of Walls prior to trial. Instead, Walls argues that he was denied the testimony of the experts who had testified at his first trial. While Ake held that failure to provide a mental health evaluation violates due process, it did not establish a right to have a specific expert conduct that examination. See Ake, 470 U.S. at 83, 105 S.Ct. 1087 (pointing out that an indigent defendant has no "constitutional right to choose a psychiatrist of his [or her] personal liking"). Nor did Ake establish a claim of ineffective assistance of mental health expert. See, e.g., Wilson v. Greene, 155 F.3d 396, 401 (4th Cir.1998) ("The Constitution does not entitle a criminal defendant to the effective assistance of an expert witness."); Harris v. Vasquez, 949 F.2d 1497, 1518 (9th Cir.1990) (indicating that valid Ake claim cannot be basis for court to conduct a "psychiatric medical malpractice review"); Silagy v. Peters, 905 F.2d 986, 1013 (7th Cir.1990) (same). Thus, Walls has failed to establish a violation of Ake and is not entitled to habeas relief on this claim. Cf. Hodges v. State, 885 So.2d 338, 353 (Fla.2004) (refusing to consider ineffective assistance of counsel claim recast as an Ake claim).

Sentencing Order
Walls claims that the sentencing court failed to independently weigh the aggravating *1178 and mitigating circumstances. Walls contends that the sentencing court read the State's sentencing memo into the record, adopting it as its own sentencing order. Walls also contends that the sentencing findings in his 1992 sentencing order are identical to those made at his first trial in 1988. Thus, he argues, the sentencing court had predetermined to impose the death penalty for Peterson's murder on retrial. Walls contends that had appellate counsel raised this issue on appeal, he would have received a life sentence.
As a threshold matter, Walls' substantive claim that the trial court failed to independently weigh the aggravating and mitigating circumstances is procedurally barred, since it could have and should have been raised on direct appeal. See Harvey v. Dugger, 656 So.2d 1253, 1256 (Fla.1995); Roberts v. State, 568 So.2d 1255, 1258 (Fla.1990). To succeed on the ineffective assistance of appellate counsel portion of the claim, Walls must establish that counsel's failure to raise the claim on appeal is of "such magnitude as to constitute a serious error or substantial deficiency falling measurably outside the range of professionally acceptable performance and, second, [that] the deficiency in performance compromised the appellate process to such a degree as to undermine confidence in the correctness of the result." Floyd v. State, 808 So.2d 175, 183 (Fla.2002) (quoting Pope v. Wainwright, 496 So.2d 798, 800 (Fla.1986)). However, appellate counsel's failure to raise a meritless issue does not constitute ineffective assistance of counsel. See Valle v. Moore, 837 So.2d 905, 908 (Fla.2002); Chandler v. Dugger, 634 So.2d 1066, 1068 (Fla.1994).
The record of Walls' sentencing proceedings on retrial shows that trial counsel voiced his objection to the sentencing order. Counsel argued that the trial court had failed to make an independent assessment of the aggravating and mitigating circumstances, had simply adopted the State's sentencing recommendation, and had made a decision to impose a death sentence prior to trial. The trial judge responded that the facts of the case did not change on retrial and that much of the same evidence was presented at both trials. The judge also stated that he had made an independent assessment of the propriety of the death penalty for Peterson's murder. Despite trial counsel's objection to the sentencing order, appellate counsel did not raise this issue on appeal. Walls claims that appellate counsel rendered ineffective assistance for failing to do so.
While the sentencing order on retrial repeats the factual findings and much of the aggravating circumstances contained in the sentencing order from the first trial, there are substantial differences in the mitigating circumstances found in the sentencing order on retrial. The sentencing order on retrial also finds a sixth aggravating factor (prior violent felony) that was not included in the sentencing order from the first trial. Further, the sentencing order on retrial accurately recounts the mitigating evidence and the witnesses who testified at the retrial, which was very different from what was presented at the first trial. From this record, we conclude that the sentencing court conducted its own evaluation and independently weighed the aggravating and mitigating circumstances in imposing the death sentence. See Blackwelder v. State, 851 So.2d 650, 652-53 (Fla.2003) (concluding that differences between State's sentencing memo and sentencing order established that trial court did not simply rubber-stamp the State's sentencing memorandum, but independently weighed the aggravating and mitigating factors and personally evaluated the case). Additionally, any similarities *1179 between the sentencing order from the first trial and the sentencing order on retrial would not have necessarily entitled Walls to relief on this issue had appellate counsel raised it on appeal. See Morton v. State, 789 So.2d 324, 334 (Fla.2001) (concluding that reversal was not necessary even though resentencing judge copied verbatim substantial portions of the prior sentencing order because it was evident from the record that the resentencing judge performed an independent weighing and personal evaluation of the case in light of several significant differences between the orders). Because Walls cannot show that he would have been entitled to relief on appeal had this claim been raised, he cannot make the required showing of prejudice and is not entitled to habeas relief.

Victim Impact Evidence
Walls also contends that appellate counsel was ineffective for failing to raise a claim regarding the sentencing court's consideration of improper victim impact evidence. Walls points to letters from the victims' family members which are contained in the record. In these letters, the victims' family members ask the trial court to sentence Walls to death and state their belief that Walls will kill again if he is not executed.
In Payne v. Tennessee, 501 U.S. 808, 827, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991), the United States Supreme Court held that the Eighth Amendment to the United States Constitution did not prevent the State from presenting evidence about the victim, evidence of the impact of the murder on the victim's family, and prosecutorial argument on these subjects, if permitted to do so by state law. Subsequently, the Florida Legislature enacted section 921.141(7), Florida Statutes (2005), which permits the prosecution to introduce and argue victim impact evidence. See ch. 92-81, § 1, Laws of Fla. Even though victim impact evidence is admissible in a death penalty case, it is limited to evidence "designed to demonstrate the victim's uniqueness as an individual human being and the resultant loss to the community's members by the victim's death." § 921.141(7), Fla. Stat. (2005). "Characterizations and opinions about the crime, the defendant, and the appropriate sentence shall not be permitted as a part of victim impact evidence." Id.; see also Payne, 501 U.S. at 830 n. 2, 111 S.Ct. 2597.
In this case, the letters from the victims' family members exceeded the proper bounds of victim impact evidence as provided in both the statute and Payne because they commented on the defendant and the crime and provided an opinion as to the proper punishment to be imposed. However, any error in this regard would not be fundamental error because the jury never saw the letters and were never exposed to this evidence. The judge alone saw this improper victim impact evidence. See Card v. State, 803 So.2d 613, 628 (Fla. 2001) (finding no fundamental error where improper victim impact evidence was introduced during the Spencer hearing, outside the presence of the jury). Thus, Walls would not have prevailed on this issue even had appellate counsel raised it on direct appeal. Accordingly, Walls is not entitled to habeas relief on this claim.

Jury Instructions
Finally, Walls asserts that appellate counsel should have raised the constitutionality of the instructions given to the jury on the aggravating circumstances, including the aggravators that the defendant had a prior violent felony conviction, that the murder was committed while the defendant was engaged in the commission of a burglary or kidnapping, that the murder was committed to avoid lawful arrest, HAC, and CCP. Walls admits that trial *1180 counsel failed to object to some of these instructions at trial. The record shows that trial counsel objected to the standard instructions on HAC and CCP as being unconstitutionally vague, requested that the standard instructions be struck, and offered written, substitute instructions in their place. The trial court denied the request and gave the standard HAC and CCP instructions. Counsel also requested a special instruction on the avoid arrest aggravating circumstance. The trial court granted this request and gave Walls' special instruction to the jury. Counsel did not object to the prior violent felony or committed during the course of a felony instructions.
Jury instructions "are subject to the contemporaneous objection rule, and, absent an objection at trial, can be raised on appeal only if fundamental error occurred." State v. Delva, 575 So.2d 643, 644 (Fla.1991). "To justify not imposing the contemporaneous objection rule, `the error must reach down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error.'" Id. at 644-45 (quoting Brown v. State, 124 So.2d 481, 484 (Fla.1960)). "In other words, `fundamental error occurs only when the omission is pertinent or material to what the jury must consider in order to convict.'" Delva, 575 So.2d at 645 (quoting Stewart v. State, 420 So.2d 862, 863 (Fla.1982)). In order for an error to be deemed fundamental and thus cognizable on appeal without being preserved below, the error must be basic to the judicial decision under review and equivalent to a denial of due process. See State v. Johnson, 616 So.2d 1, 3 (Fla.1993).
The constitutionality of the HAC and CCP jury instructions were asserted as error on direct appeal. See Walls, 641 So.2d at 387. This Court noted that the HAC instruction given to the jury had been upheld by this Court in a previous opinion. Id. Moreover, we concluded that the evidence in the case "clearly supports the existence of heinous, atrocious, or cruel beyond a reasonable doubt." Id. Thus, the Court found no merit to Walls' challenge of the HAC instruction. Id. While the CCP instruction given to the jury "violated the requirements recently established in Jackson v. State, [648 So.2d 85 (Fla.1994)]," id., and Walls properly preserved the issue for appeal, we concluded that the error in instructing the jury was "harmless because all four elements of this aggravator would exist under any definition." Id. at 389. Appellate counsel cannot be deemed ineffective for failing to prevail on an issue raised and rejected on appeal. See Teffeteller v. Dugger, 734 So.2d 1009, 1020 (Fla. 1999).
Even if appellate counsel had raised claims relating to the prior violent felony and the committed during the course of a felony instructions as fundamental error on direct appeal, Walls would not have prevailed because these instructions have withstood similar challenges. See Blanco v. State, 706 So.2d 7, 11 (Fla.1997) (finding that instruction on aggravating circumstance of murder in the course of a felony does not constitute an automatic aggravator); Whitton v. State, 649 So.2d 861, 867 n. 10 (Fla.1994) (concluding that standard jury instruction for avoid arrest aggravator was not vague and did not require a limiting instruction in order to make the aggravator constitutionally sound); Gorby v. State, 819 So.2d 664, 686 (Fla.2002) (declining to determine that the jury instruction for the "prior violent felony" aggravator is invalid). Appellate counsel's failure to appeal these unpreserved and meritless issues is not deficient performance.
Finally, even if there were some infirmity in the instructions given on these aggravating *1181 circumstances, Walls still could not prevail because the record clearly supports the existence of the prior violent felony, committed during the course of a felony, and avoid arrest aggravators. Walls was convicted of the contemporaneous murder of Alger, which clearly supported the "prior violent felony" aggravating circumstance. See Zeigler v. State, 580 So.2d 127, 129 (Fla.1991) (explaining that prior violent felony aggravating factor is properly applied where the contemporaneous crime is committed upon a separate victim). Additionally, "there was sufficient evidence of a kidnapping here" because Walls "forcibly confined Peterson against her will, without lawful authority, for the purpose of inflicting bodily harm and terrorizing her." Walls, 641 So.2d at 389. Finally, "Walls' own confession stated that he killed Peterson because he wanted no witnesses," which is direct evidence that Walls' dominant motive for killing Peterson was to eliminate a witness. Id. at 390.
Thus, Walls has not established ineffective assistance of appellate counsel relating to instructional error and is not entitled to habeas relief on this claim.

CONCLUSION
For the reasons stated above, we affirm the trial court's denial of postconviction relief. However, Walls is entitled to file a motion for determination of mental retardation as a bar to execution in the circuit court pursuant to rule 3.203. We also deny Walls habeas relief.
It is so ordered.
PARIENTE, C.J., and WELLS, ANSTEAD, LEWIS, QUINCE, CANTERO, and BELL, JJ., concur.
NOTES
[1] Walls raised the following nine claims in his postconviction motion filed in the trial court: (1) he was denied a fair guilt phase proceeding due to ineffective assistance of counsel, prosecutorial misconduct, and trial court error; (2) counsel conceded guilt and eligibility for the death penalty without Walls' consent; (3) he was denied a fair penalty phase proceeding due to ineffective assistance of counsel, prosecutorial misconduct, and trial court error; (4) counsel failed to obtain an adequate mental health evaluation in violation of Ake v. Oklahoma, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985); (5) his death sentence is unconstitutional because he is mentally retarded; (6) the trial court did not independently weigh the aggravating and mitigating circumstances; (7) the trial court considered inadmissible victim impact evidence; (8) the jury was improperly instructed on the aggravating factors; and (9) the cumulative effect of these procedural and substantive errors deprived him of a fair trial.
[2] Huff v. State, 622 So.2d 982 (Fla.1993).
[3] The experts included psychologist Dr. Edward Chandler, psychiatrist Dr. Eugene Valentine, and neuropsychologist Dr. Karen Hagerott.
[4] Although Walls alleges that there is mitigating evidence of sexual abuse that his trial counsel did not present at trial, he never explains this further. In fact, Walls' second amended postconviction motion contained no allegation of sexual abuse.
[5] In Apprendi, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id. at 490, 120 S.Ct. 2348 (emphasis added).